McMILLAN, trustee, *vs.* S. T & E. J. KNAPP *et al.*

[This case was argued at the last term and the decision reserved.]

1. Where one who made a voluntary assignment for the benefit of creditors omitted from the schedule attached thereto the right of redemption which he had in certain premises which he had conveyed for the security of a debt, the omission was fatal to the assignment.

2. Where the affidavit verifying the schedule of assets attached to a voluntary assignment for the benefit of creditors stated that it contained "a true, complete and perfect schedule of all the property of which I am possessed, both real and personal, including my stock in trade, accounts, promissory notes, executions and real estate, all of which is marked Exhibit A, and household and kitchen furniture," this did not meet the requirements of the statute. which provides that the assignor shall swear that the schedule attached is a full and complete inventory and schedule of all the assets of every kind held, claimed or owned by him at the execution of the deed of assignment. The affidavit made covers only the property actually in the assignor's possession and under his control at the time the assignment was made.

May 1, 1886.

Debtor and Creditor. Assignments. Laws. Construction of Statutes. Before Judge HARDEN. City Court of Savannah. July Term, 1885.

A *fi. fa.* in favor of S. T. & E. J. Knapp against James G. Watts was levied on a stock of goods, and a claim was interposed by F. F. Watts. By agreement, the property was sold and the fund was brought before the court for distribution, and the case was left to his determination without a jury. The parties claiming the fund were as follows: Plaintiffs in *fi. fa.* and other judgment cred-

itors of James G. Watts, who had lodged their *fi. fas.* with the sheriff; F. F. Watts, who claimed as a purchaser of the stock of goods by reason of a sale under the assignment set out below; and W. D. McMillan, trustee, who claimed as a preferred creditor under the assignment, but insisted that the sale to F. F. Watts was invalid, or, if it was valid at all, under the facts, it inured to the benefit of the trust estate. It was agreed that, if the assignment was good, the levy of plaintiffs in *fi. fa.* should be dismissed and the fund go to F. F. Watts, if the purchase by him individually was good, or, if not, then to McMillan, trustee. If the assignment was held not to be good, the fund should be awarded for distribution among the execution creditors.

The following facts were agreed to be true: On April 11, 1885, James G. Watts made an assignment for the benefit of creditors to F. F. Watts, as assignee, including in the inventory the stock of goods in controversy. The stock of goods was put up for sale by the assignee and knocked off to himself individually for $1,125 on April 28, 1885. F. F. Watts was also trustee for Mrs. Caroline M. Watts and her children, and as such held certain notes due to the trust estate by the assignor, and which were preferred debts in his assignment. When F. F. Watts bid off the goods at the sale, he did not pay any money, but credited the amount of his bid on one of these trust notes. He went into possession. On May 4, 1885, plaintiffs in *fi. fa.* recovered judgment against James G. Watts, and on May 18, the *fi. fa.* issuing thereon was levied on the goods in the hands of F. F. Watts. He claimed individually, and having resigned his office as trustee, his successor, McMillan, filed the claim on behalf of the trust estate.

The deed of assignment was introduced. It contained the following clauses:

"  . . . and also all choses in action, notes, accounts, books of account, and all claims whatsoever in law or equity which may in any wise belong to the said James G. Watts . . . . And also all

property, both real and personal, belonging to the said James G. Watts, a true inventory of which is hereto attached, marked Exhibit A, and to which reference is made, together with all his estate, right, title, interest, property, claim and demand of, in or to the same . *.* · · forthwith to take possession of all and singular the property hereby assigned and conveyed, and within such convenient time as to him, the said F. F. Watts, shall seem proper, either at public or private sale, to sell and dispose of the same for the use and benefit of his said creditors, to be paid in the manner hereinafter mentioned, . . . . " etc.

There was an inventory of assets, attached to which was the following affidavit:

"STATE OF GEORGIA—Chatham County.

" I, James G. Watts, of the county and State of Georgia, do solemnly swear that the foregoing pages contain a true, complete and perfect schedule of all the property of which I am possessed, both real and personal, including my stock in trade, accounts, promissory notes, executions and real estate, all of which is marked Exhibit A, and household and kitchen furniture."

Besides the agreed facts, plaintiffs in *fi. fa.* introduced testimony, in brief, as follows: James G. Watts, the assignor, was the owner of a lot in the city of Savannah. Being indebted to one Fisher the principal sum of $1,500, he made a deed to Fisher on April 3, 1883, and took a bond for title to be made by Fisher to him on repayment of the money, which was due two years after date. Subsequently James G. Watts borrowed $2,000 from the Pulaski Loan Association and made them a deed and took a bond to re-convey upon payment of the loan, it being payable in monthly installments. This loan was made subject to the Fisher claim, and on the same day (March 14, 1884), James G. Watts transferred the bond in writing to the association. The assignment is dated April 11, 1885. A witness, who stated that he was familiar with the affairs of the association and often acted for the secretary, testified that he had seen J. G. Watts both before and since the assignment in regard to his indebtedness to the association and giving up his property in payment of the same; that he was in arrears; that the association got possession sometime after

the assignment, and final action, closing up the matter, was not taken until the meetings in June and July, 1885, and it was closed by an agreement that the association should take the property in satisfaction of the debt due them and the Fisher claim, which it appears they had taken up; that witness drew a quit-claim deed, but Watts, after consulting with his lawyer, did not want to sign it, saying that he did not wish to prejudice this case, which was then pending; also that he drew the bond for title from the association to Watts; thought it had been sent to Watts; could not find it. As to the value of the lot, this witness testified as follows:

" I do not know what said property is worth, but believe that at a sale it would have paid off the debts and there would have been a margin over to the association. That margin might be a small one; but if a foreclosure was made, there would have been no margin to any one."

Another witness testified that J. G. Watts had arranged to procure a loan of $3,500 on this lot as security, in order to pay off the loan association and the Fisher claim, but after the assignment, nothing more was done in the matter. Witness did not consider the property worth more than $2,500.

The minutes of the association of June and July were introduced in evidence, showing the closing of this matter; also the deed to Fisher and bond back from him, the assignment of this bond to the association. The deed from Watts to the association and their bond to re-convey were introduced. Across the face of the bond for re-conveyance from Fisher to Watts was written an entry of cancellation by reason of being performed " by proper conveyance under it," dated June 17, 1885, and signed by the association.

The claimant introduced the following testimony:

*James G. Watts*, the assignor, testified, in brief, as follows: Does not recollect bond referred to from the association to him. If he ever had it, he surrendered it when he relinquished his right to the lot. Got loan of $2,000

from the association, gave a deed, and took their bond to re-convey on payment of indebtedness to them, this being subject to the Fisher claim. Was unfortunate, and could not meet installments as they fell due, and got in arrears and saw no way out. Surrendered all interest in lot several months before making assignment. After the assignment, he was asked to sign a quit-claim deed, but refused because he did not consider that he had any interest in that property. Has never claimed to own any interest in it since he surrendered his right to the association. The Fisher claim was for $1,500, besides interest and attorney's fees, and the debt to the association was $2,000. The lot and improvements were not worth as much as the debts by a considerable amount.

The attorney who drew the assignment testified that Watts told him of the making of the deed to Fisher and the taking of the bond to re-convey; that he could not pay the debt upon the lot, and had surrendered all his interest, and completely relinquish it; that thereupon the attorney advised him, that if he had made an absolute deed to the property, and had failed to comply with the condition of the sale, he need not put it in his schedule.

The assignee testified that he had disposed of the property, except certain notes and accounts, which were not worth more than $400, and certain executions worth little or nothing.

The presiding judge held the assignment void, and rendered judgment in favor of the execution creditors. McMillan, trustee, moved for a new trial on various grounds, the substance of all of them being that the court held that the inventory or schedule attached to the assignment should have contained the equity of redemption in the lot, and was void because of its omission.

The motion was overruled, and McMillan, trustee, excepted.

LESTER & RAVENEL; ALFRED B. SMITH, for plaintiff in error, cited as follows:

Title absolutely in association; 54 *Ga.*, 45; 57 *Id.*, 601; 55 *Id.*, 691, 650, 412; 60 *Id.*, 562, 590; 61 *Id.*, 398, 400; 64 *Id.*, 651, 776; 66 *Id.*, 704.

Schedule: Acts 1880–1, p. 174; Code (*Addenda*), §§1953 (d), (e).

GARRARD & MELDRIM; J. S. SCHLEY; RICHARDS & HEYWARD; LAWTON & CUNNINGHAM; CHAS. N. WEST, for defendants, cited as follows:

Schedule: Acts 1880–1, p. 174; 32 *Ga.*, 81; 50 *Id.*, 1.

Strict construction: 70 *Ga.*, 293; *Coggins vs. Stephens & Co.*, 73 *Ga.*, 414; 7 *Ga.*, 167; 20 *Id.*, 577; 14 *Id.*, 231; 60 *Id.*, 113; 9 *Id.*, 598.

Power of assignee fraudulent: Pargi, 37; 47 Md., 545.

Equity of redemption is property: 7 *Ga.*, 187; 20 *Id.*, 728; 57 *Id.*, 59; 59 *Id.*, 234; 72 *Id.*, 863; 4 Peters, 511; 5 *Id.*, 117; 50 Ala., 516; 15 Ark., 202.

HALL, Justice.

The assignment in this case was adjudged invalid, because the schedule of assignor's effects was not a full and complete inventory and schedule of " all the assets of every kind held, claimed or owned " by him at the execution of the deed, and because it was not verified, as required by the act of 28th of September, 1881. The property left out of it was the right of redemption which the assignor had in certain premises conveyed for the security of a debt he owed, and which right of redemption he surrendered to the party holding the deed, shortly after the execution of the assignment.

1. This omission from the schedule was fatal to the assignment, as we this day held in *Turnipseed et al. vs. Schaefer et al.*

2. The affidavit was that the schedule contained " a true, complete and perfect " inventory of " all the property of which " the assignor was " then possessed, both real and personal," " including " his " stock in trade, accounts, prom-

issory notes, executions and real estate, all of which is in schedule marked Exhibit A, and household and kitchen furniture." It will be seen at a glance that this is not the affidavit required by the statute, and that the enumeration of the several kinds of property contained in the schedule excludes that which was left out of the assignment. It goes only to the property actually in his possession and under his control at the time the assignment was made; the oath required by the statute is more comprehensive. The party is required to swear that the schedule attached is a full and complete inventory and schedule of all the assets of every kind held, claimed or owned by him at the execution of the deed of assignment. The words underscored are conspicuously and it may be suspiciously absent from this affidavit. The safer rule in such cases is to follow the words of the act, and to comply substantially, if not literally, with all its conditions and requirements; otherwise the deed may and ought to be set aside.

Judgment affirmed.